In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00007-CV


______________________________




NANCY TRAUT, Appellant



V.



WILLIAM R. BEATY, M.D., Appellee




 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 98C0869-102




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Cornelius



O P I N I O N



 Nancy Traut appeals from a summary judgment granted in favor of William Beaty, M.D. 
Traut sued Beaty, (1) alleging negligence and negligence based on res ipsa loquitur when part of a wire,
about one centimeter long, was left in Traut's left breast after Beaty performed a hook-wire needle
localization procedure on her. (2) Sometime later, Beaty filed a motion for sanctions under Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon Supp. 2002), contending that Traut failed to file the
expert report required by the statute. The trial court ordered Traut's cause of action for negligence
dismissed with prejudice and ordered Traut to produce an expert report within 120 days. 

 After the period specified in the trial court's order expired, Beaty filed a motion for summary
judgment, a supplemental motion for summary judgment, and a new motion for sanctions. In his
summary judgment motions, Beaty contended res ipsa loquitur was inapplicable as a matter of law. 
He also contended there was no evidence that his negligence caused Traut's injury. In his motion
for sanctions, Beaty contended Traut failed to provide the expert report the trial court had previously
ordered. 

 The trial court ordered Traut's cause of action for negligence based on res ipsa loquitur
dismissed with prejudice and granted Beaty's motions for summary judgment. On appeal, Traut
contends the trial court erred in granting Beaty's second motion for sanctions and his motions for
summary judgment. (3)

 The Medical Liability and Insurance Improvement Act, Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 13.01(d)(1), requires a plaintiff, within 180 days of filing a claim, either to furnish one
or more expert reports to counsel for each physician or health care provider against whom the
plaintiff asserts the claim or to nonsuit the case. An expert report is not required for any issue other
than an issue related to liability or causation. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(j).

 If the plaintiff fails to provide an expert report or to nonsuit the case within the time required,
the trial court must, on the defendant's motion, award as sanctions (1) the defendant's reasonable
attorney's fees and court costs; (2) the forfeiture of the plaintiff's cost bond to the extent necessary
to pay the award; and (3) the dismissal of the plaintiff's action with prejudice. Tex. Rev. Civ. Stat.
Ann. art. 4590i, § 13.01(e). The trial court may grant one thirty-day extension of the deadline for
filing the expert report on a showing of good cause after motion and a hearing. Tex. Rev. Civ.
Stat. Ann. art. 4590i, § 13.01(f). We apply an abuse of discretion standard when reviewing a
dismissal under Article 4590i, § 13.01, reversing only if the trial court acts unreasonably or
arbitrarily. Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 877 (Tex. 2001).

 As a general rule, a plaintiff has no cause of action against a doctor for malpractice, either
in diagnosis or treatment, unless he proves by a doctor of the same school of practice as the
defendant that the diagnosis or treatment complained of was negligence and that such negligence was
a proximate cause of the plaintiff's injuries. Williams v. Bennett, 610 S.W.2d 144, 146 (Tex. 1980). 
Ordinarily, expert testimony is required to establish the governing standard of care, and to determine
whether the standard has been breached. Ocomen v. Rubio, 24 S.W.3d 461, 466 (Tex. App.-Houston
[1st Dist.] 2000, no pet.); McCombs v. Children's Med. Ctr. of Dallas, 1 S.W.3d 256, 259 (Tex.
App.-Texarkana 1999, pet. denied).

 Res ipsa loquitur, meaning "the thing speaks for itself," is an evidentiary rule applied when
the circumstances surrounding an accident are sufficient to support an inference of negligence. 
Haddock v. Arnspiger, 793 S.W.2d 948, 950 (Tex. 1990). Res ipsa loquitur applies when (1) the
character of the accident is such that it would not ordinarily occur in the absence of negligence, and
(2) the instrumentality causing the injury is shown to have been under the management and control
of the defendant. 

 For health care liability claims, res ipsa loquitur applies only in those cases to which it has
been applied as of the effective date of the Medical Liability and Insurance Improvement Act, i.e.,
August 29, 1977. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 7.01 (Vernon Supp. 2002); see also
Haddock v. Arnspiger, 793 S.W.2d at 950. At the time the Act was enacted, Texas courts generally
recognized res ipsa loquitur was inapplicable in medical malpractice cases, except when the nature
of the alleged malpractice and injuries are plainly within the common knowledge of lay people, such
as negligence in the use of mechanical instruments, operating on the wrong portion of the body, or
leaving surgical instruments or sponges in the body. Haddock v. Arnspiger, 793 S.W.2d at 951. 
Further, a plaintiff may not automatically rely on res ipsa loquitur in every medical malpractice case
involving the use of a mechanical instrument, but only in those cases where the use of the
mechanical instrument is within the common knowledge of lay people. Id. In Haddock, for
example, the Texas Supreme Court held that the use of a flexible colonoscope to perform a
proctological examination was not within the common knowledge of lay people. Id. at 954.

 Beaty contends this is not a proper case for the application of res ipsa loquitur. The trial
court granted Beaty's motion for summary judgment. The judgment was based on Beaty's contention
that res ipsa loquitur did not apply. However, reviewing the summary judgment proof, we conclude
that the trial court erred because Beaty's deposition testimony is sufficient to create a fact question
on whether he conceded he breached the standard of care, notwithstanding whether res ipsa loquitur
applies. In his deposition, Beaty testified:

 Q. And then somehow that piece of wire broke off while you were taking the
wire out?


 A. Correct.


 Q. And ordinarily you would take all the wire out?


 A. Correct.


 Q. And the appropriate care would be to take the whole wire out; would you
agree with that?


 A. Right. I agree.


 Q. And that would be prudent to take the whole wire out, correct?


 A. Right.


 Q. And it would not be prudent to leave a piece of wire in that lady's body?


 A. Well, you don't want to leave the wire in; you would want to take it out. 
There's no need to leave it in there.


 Q. Right. It would be prudent to take all the wire out?


 A. Right.


 Q. It would not be prudent to leave some piece in there?


 A. Right.


 Q. Do you agree with that statement?


 A. Just for the - that, yes.


 . . . .


 Q. Did you tell the patient that [the wire broke off in her breast]?


 A. No, I didn't.


 Q. Why not?


 A. At the time we - this lady had - well, I don't actually remember exactly why
not, but I can tell you what the motives I would have not to tell her.


 Q. Go ahead.


 A. . . . [T]he fact that it's [the wire] in there, all the evidence I know about and
in my experience I've never seen it cause any trouble to a breast. I've seen multiple
wires left in people's breast [sic] and nobody has had any trouble as far as I know. 
There is no medical complication from it . . . . In addition to that, if we had taken it
out, she'd have to go and have it opened up by the surgeon. This would increase the
risk of a scar in her breast, and this would make it harder to interpret her
mammogram. I knew I was going to ask to have a month or two to make sure that
nodule was gone. So, it would just make it harder to determine that, so it would be
better not to take it out . . . I wanted it to stay in there. If I had told her, I would still
insist that she left [sic] it alone and it would still been [sic] there.

 In short, Beaty testified that the appropriate care is to take the wire out and that it is not
prudent to leave a part of the wire in the patient. However, he also testified that leaving the wire in
would cause no medical complications, that taking it out would require surgery and risk scarring, and
that he would have advised Traut to leave it in. Beaty's conflicting testimony creates a fact question
on the issue of the standard of care and the breach of that standard irrespective of whether res ipsa
loquitur applies. Therefore, Beaty failed to show himself entitled to judgment as a matter of law.

 The remaining question is whether the trial court correctly dismissed Traut's cause of action
for her failure to provide an expert report. Traut contends a plaintiff need not provide an expert
report when the cause of action alleges negligence based on res ipsa loquitur. Beaty contends res
ipsa loquitur does not apply. (4)

 We are aware of only two Texas cases in which a plaintiff made a similar contention to the
one Traut makes here. See Schorp v. Baptist Mem'l Health Sys., 5 S.W.3d 727, 734 (Tex. App.-San
Antonio 1999, no pet.); Odak v. Arlington Mem'l Hosp. Found., 934 S.W.2d 868, 869 (Tex.
App.-Fort Worth 1996, writ denied). In Schorp, the court of appeals held the circumstances
surrounding the insertion of an arterial line into the plaintiff's radial artery and the subsequent
complications that developed were matters outside the common knowledge of jurors. Schorp v.
Baptist Mem'l Health Sys., 5 S.W.3d at 735-36. In Odak, the court of appeals held that the use of
an intravenous needle to give an infant an injection that caused the child's foot and leg to swell,
blister, and burn was not within the common knowledge of lay people. Odak v. Arlington Mem'l
Hosp. Found., 934 S.W.2d at 873. In both cases, therefore, res ipsa loquitur did not apply and
expert testimony was needed. Schorp v. Baptist Mem'l Health Sys., 5 S.W.3d at 736; Odak v.
Arlington Mem'l Hosp. Found., 934 S.W.2d at 873.

 Beaty cites Arguello v. Gutzman, 838 S.W.2d 583, 585 (Tex. App.-San Antonio 1992, no
writ), in which the plaintiff alleged he was injured when one of the jaws of a meniscus grabber his
doctor was using to repair his knee broke off in his knee. The plaintiff contended summary judgment
was inappropriate because res ipsa loquitur applied to raise a fact issue on breach of duty and
proximate causation. Id. at 587. The court of appeals held that the use of a meniscus grabber was
not a matter plainly within the common knowledge of lay people, making res ipsa loquitur
inapplicable. Id.

 Traut relies on Steinkamp v. Caremark, 3 S.W.3d 191, 193 (Tex. App.-El Paso 1999, pet.
denied), in which the defendant inserted a catheter in the plaintiff's arm, but the catheter
disintegrated, requiring the plaintiff to undergo surgery without anesthesia to remove the catheter. 
The trial court struck the deposition testimony of the plaintiff's expert witness and granted the
defendant's no-evidence motion for summary judgment. Id. at 195.

 The court of appeals held summary judgment was inappropriate because, under a theory of
res ipsa loquitur, no expert testimony was required to establish the standard of care or the breach of
that standard. Id. at 195, 197. In so holding, the court of appeals distinguished Haddock and
Arguello as cases involving the use of medical instruments as opposed to leaving a medical
instrument inside the body. Id. at 196.

 The present case is different from both Steinkamp and Arguello. In both those cases, the
instruments broke inside the patients' bodies and the defendants took immediate action to remove
the broken pieces. In the present case, the instrument broke inside the patient's body and the doctor
left it in without seeking its removal.

 Nevertheless, res ipsa loquitur cannot be applied in every case in which an object is left in
a patient's body. See Westerlund v. Naaman, 833 S.W.2d 725, 728 (Tex. App.-Houston [1st Dist.]
1992, no writ) (res ipsa loquitur did not apply where thirty-centimeter-long thread found in patient's
body after surgery); Rogers v. Duke, 766 S.W.2d 547, 548 (Tex. App.-Houston [1st Dist.] 1989, no
writ) (res ipsa loquitur did not apply where sponge left in patient's body because summary judgment
proof showed doctor not in control of sponge at the time it was left in patient). Such a conclusion
follows logically from the rule that res ipsa loquitur is inapplicable in medical malpractice cases,
except when the nature of the alleged malpractice and injuries are plainly within the common
knowledge of lay people. To conclude res ipsa loquitur applies any time an object is left inside a
patient would make the exception the rule.

 In Steinkamp, the court characterized the negligent act as "leaving one piece of catheter inside
Steinkamp's vein to travel dangerously toward her heart." Steinkamp v. Caremark, 3 S.W.3d at 197. 
The present case does not involve the same type of risk to the patient; therefore, the inference of
negligence is far less tenable. In fact, Beaty's deposition testimony, quoted above, demonstrates that
the risk to Traut's overall care from removing the wire may have justified the decision to leave the
wire in. Determining such a question is not plainly within the common knowledge of lay people. 
Therefore, res ipsa loquitur does not apply, expert testimony was required, and Traut needed to
provide an expert report.

 Further, Steinkamp provides authority for Beaty's contention that an expert report is needed
to prove causation even where res ipsa loquitur applies. In Steinkamp, the defendant contended
there was no evidence the defendant's breach of her duty caused the plaintiff's injury. Steinkamp v.
Caremark, 3 S.W.3d at 199. The court of appeals held the plaintiff's summary judgment proof did
not raise a fact question on the issue of causation. Specifically, the court held causation in a medical
negligence case must be proved by expert testimony. 

 In Kalteyer v. Sneed, 837 S.W.2d 848, 853 (Tex. App.-Austin 1992, no writ), the plaintiff
alleged res ipsa loquitur applied to establish her doctor's negligence in giving her an injection of a
substance to which she had previously suffered an adverse reaction, and in improperly shielding her
during an X-ray. The court of appeals assumed res ipsa loquitur applied, but held summary
judgment for the doctor was appropriate because the plaintiff failed to produce expert testimony
raising a fact question on the issue of causation. Id. at 853-54.

 Not every medical malpractice case requires expert testimony to demonstrate causation. A
trier of fact may decide the issue of causation in medical malpractice cases when (1) general
experience and common sense will enable a lay person fairly to determine the causal connection, (2)
expert testimony establishes a traceable chain of causation from the injuries back to the event, or (3)
a probable causal connection is shown by expert testimony. Parker v. Employers Mut. Liab. Ins. Co.
of Wis., 440 S.W.2d 43, 46 (Tex. 1969); Cruz v. Paso Del Norte Health Found., 44 S.W.3d 622, 630
(Tex. App.-El Paso 2001, pet. denied); Bradley v. Rogers, 879 S.W.2d 947, 954 (Tex.
App.-Houston [14th Dist.] 1994, writ denied); see also Rehabilitative Care Sys. of Am. v. Davis, 43
S.W.3d 649, 660 (Tex. App.-Texarkana 2001, pet. denied).

 For instance, in Manax v. Ballew, 797 S.W.2d 71, 72 (Tex. App.-Waco 1990, writ denied),
a jury found a physician negligent for operating on the wrong portion of the plaintiff's back to
remove a lipoma. The court of appeals held the trial court did not err in giving a jury instruction on
res ipsa loquitur because any lay person could look at the plaintiff's back and determine the surgery
was performed in a different area than the doctor agreed to perform it. Id. at 73. Significantly,
though acknowledging the rule that the plaintiff must still present evidence of a causal connection
between the doctor's negligence and the plaintiff's injury, the court held that the fact of the resulting
injury was indisputable in that case. 

 The present case does not present a situation in which general experience and common sense
would enable a lay person to determine the causal connection between Beaty's negligence and Traut's
injury, if any. In her deposition, which she included in her summary judgment proof, Traut testified
the piece of wire was causing her mild discomfort, specifically when she wore "a certain type of bra"
or when she lay on her stomach. She also testified two other doctors told her the wire would not
cause her any problems. 

 In contrast, Beaty testified in his deposition that a piece of wire left in a patient's breast would
not cause the patient pain, even if it moves around. He also testified any pain or discomfort Traut
is experiencing could have resulted from some other complication arising from the procedure. 

 All of this testimony demonstrates the need for expert testimony to establish the causal
connection between Beaty's negligence and Traut's pain and discomfort. In Manax, the jury could
readily evaluate the causal connection between the defendant's failure to operate on the correct
portion of the plaintiff's back and the plaintiff's injury. Manax v. Ballew, 797 S.W.2d at 73. In this
case, a jury could not rule out other causes of Traut's discomfort without the aid of expert testimony.

 We find the trial court did not abuse its discretion in dismissing the suit because of Traut's
failure to provide the expert report required by Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01. We
need not address whether summary judgment was appropriate on Beaty's contention that Traut
presented no evidence establishing causation.

 The judgment is affirmed.

 


 William J. Cornelius

 Chief Justice


Grant, J., concurs in the result only.


Date Submitted: March 12, 2002

Date Decided: April 26, 2002


Publish
1. Traut also sued Dr. Robert Mack, but later dismissed him as a defendant in the case.
2. At oral argument, Traut contended her cause of action was based on Beaty's action in
breaking off the wire in her breast. However, in her petition, Traut alleged, "Defendant [has]
violated the common law doctrine of res ipsa loquitur by leaving the needle or piece of a needle in
plaintiff's left breast and [is] thereby guilty of negligence per se."
3. Traut does not contest the trial court's first sanctions order, which dismissed her negligence
claim that was not based on res ipsa loquitur.
4. At oral argument, Beaty contended Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon
Supp. 2002) requires an expert report even when the plaintiff alleges negligence based on res ipsa
loquitur. This contention is somewhat broader than the one he made in his brief, in which he
contends an expert report is needed to establish causation when the plaintiff alleges negligence based
on res ipsa loquitur. See Appellant's Brief at 6-7 ("The application of . . . res ipsa loquitur . . . does
not eliminate the need for evidence of causation."). Because we agree with the contention Beaty
makes in his brief, we need not address the broader contention he made at oral argument. 



oter;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-029-CR%20Colbert%20v.%20State%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00029-CR

                                                ______________________________

 

 

                              ELIJAH LORENZO COLBERT,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 8th Judicial District Court

                                                           Hopkins County, Texas

                                                          Trial Court
No. 0820618

 

                                                        
                                          

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Elijah
Lorenzo Colbert appeals.[1]  In this case, Colbert was convicted of
engaging in organized criminal activity and sentenced to life in prison as a
result of his participation with others in breaking into a pawnshop and
stealing pistols.  As with the companion
prosecution, after investigation that centered police attention on certain
individuals and resulted in the recovery of many of the stolen items, a
participant admitted involvement and identified Colbert as one of the other
robbers.  At trial, several other
witnesses provided testimony that corroborated the co-defendants statements.

            Because
the issues raised in each appeal are identical, for the reasons stated in our
opinion dated this day in Colbert v. State, cause number 06-10-00028-CR,
we affirm the judgment of the trial court.

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          April
14, 2011

Date Decided:             April
15, 2011

 

Do Not Publish











[1]In
a companion appeal, also decided this day, Colbert was convicted of burglary of
a building and sentenced to twenty years imprisonment.  He was tried in both cases in a single
proceeding.